Patent; validity and infringement. — On April 3,1957, the court rendered an opinion in Case No. 304-54, 138 Ct. Cl. 114, together with findings of fact, holding- that the patent in suit is valid, that it was infringed upon by defendant, that judgment be entered to that effect and that the extent of liability be *597 determined in further proceedings before the trial commissioner. On January 30,1959, plaintiffs filed a supplemental petition in Case No. 45-59 averring additional infringement of the patent.
On February 13,1962, Trial Commissioner Donald E. Lane filed a report recommending that plaintiff Insulating Concrete Corporation is not entitled to recover and that plaintiff Zonolite Company is entitled to recover the principal amount of $23,494. Upon consideration thereof, together with the exceptions to the commissioner’s report and oral argument of counsel, the court adopted the report and findings of the commissioner as the basis for its judgment as to McGuire, Beaufort, and Andrews Air Force Bases and the rate as set forth in Finding 28 as applicable to infringements at the other installations. The report is as follows:
REPORT OF COMMISSIONER
1. On April 3, 1957, the court held that Goff patent 2,355,966 is valid and has been infringed by some portions of the underground insulated pipe system installed at defendant’s McGuire Air Force Base. 138 Ct. Cl. 114. On January 30, 1959, plaintiffs filed a supplemental petition (No. 45-59) averring infringement of the Goff patent by defendant’s installations at 21 additional locations. On May 27, 1960, the court allowed plaintiffs’ motion for severance under Buie 38 (c) that the accounting proceed with respect to plaintiffs’ claim against defendant’s (1) McGuire Air Force Base, Wrightstown, N.J., (2) Marine Air Force Base, Beaufort, S.C., and (3) Andrews Air Force Base, Camp Springs, Md., hereinafter called McGuire, Beaufort, and Andrews. Plaintiffs stated that these three claims severed for trial, were believed to be representative of all the averred infringing installations. An accounting trial has been held in order to determine the amount of reasonable and entire compensation due plaintiffs under Title 28 U.S.C., § 1498, for McGuire, Beaufort, and Andrews.
2. In this accounting, plaintiffs urge that reasonable and entire compensation should include (1) the loss of royalty due plaintiff Zonolite Company, hereinafter called Zonolite, *598 as holder of legal title to the Goff patent, plus (2) the loss of profits to plaintiff Insulating Concrete Corporation, hereinafter called Insulating, as licensee of Zonolite for the geographical area containing McGuire, Beaufort, and Andrews. Plaintiffs urge that the loss of royalty suffered by Zonolite be measured on the basis of 50 cents for each 4-cubic-foot bag of vermiculite aggregate used in installation, this rate having been established by Zonolite in numerous license agreements prior to this suit. Plaintiffs urge that the loss of profits suffered by Insulating be measured by the profits which Insulating would normally have made, the profits of the contractors who made the infringing installations, and the savings realized by defendant over the cost of equivalent but noninfringing underground insulated pipe systems. Defendant urges that plaintiffs have misused the Goff patent in a maimer to preclude any compensation or that compensation be only for actual infringement, that Insulating is not an exclusive licensee and has no proprietary interest in the Goff patent, and that the disclosure of the Goff patent amounts to only a trifling contribution to the art.

McGuire Air Force Base

3. The underground insulated pipe system at McGuire was installed by Richmond Asbestos Company, a subcontractor, hereinafter called Richmond. The Richmond records indicate that the insulating concrete used at McGuire normally contained 6.75 bags of vermiculite aggregate of 4 cubic feet each for each cubic yard of insulating concrete in the 8-to-l mix and also in the 16-to-l mix. Richmond purchased approximately 42,011 bags of vermiculite aggregate for use at McGuire. Richmond also purchased approximately 3,721 cubic yards of ready-mixed insulating concrete for use at McGuire. This amount of ready-mixed insulating concrete contained approximately 25,117 bags of vermiculite aggregate. The total number of 4-cubic-foot bags of vermiculite aggregate used at McGuire was approximately 67,128. At the standard Zonolite royalty rate of 50 cents per bag, the Zonolite royalty on the McGuire installation would have amounted to $33,564.
*599 4. Available evidence is inadequate for accurately determining what proportion of the total McGuire underground pipe system was enclosed in a structural concrete encasement or within preformed vermiculite planks and hence not an infringement of the Goff patent. Richmond prepared a summary for the accounting trial which indicates that the total length of the McGuire installation as built included over 48,000 lineal feet of underground insulated pipe, of which over 30,000 lineal feet were straight run not under roads and not in expansion loops. These Richmond figures indicate that approximately 62% of the total underground conduit length may have been an infringement of the Goff patent. The Richmond subcontract with Charles Simkin & Sons, Inc., prime contractor at McGuire, hereinafter called Simkin, requires Richmond to indemnify for any patent infringement.
5. The Richmond subcontract at McGuire covered certain work in addition to the installation of the underground insulated pipe system. Richmond received $1,337,028 from Simkin, but only $747,350 of this sum related to the underground insulated pipe system.
6. A summary of profit and loss data prepared on behalf of plaintiff Insulating indicates that during the 5-year period 1952-1956 inclusive, the insulating of underground pipe systems by Insulating produced a gross profit of $819,013 on gross sales amounting to $2,475,276, resulting in an average gross profit of approximately 33% of gross sales. The summary also indicates that the overhead expenses of Insulating varied little during said period. An accountant employed by plaintiff Insulating estimated that the overhead expenses of Insulating might have increased approximately $37,500 if Insulating had made the installation at McGuire. Applying the 33% profit rate to the McGuire underground insulated pipe system cost of $747,350 and then subtracting the estimated increase in overhead expense of $37,500, indicates that Insulating might have expected to realize a net profit of approximately $209,125 if Insulating had received the underground insulated pipe system portion of the McGuire subcontract. The evidence does not show that Insulating had previously made underground insulated pipe system in *600 stallations as extensive as that installed by Bichmond at McGuire. The estimated profit rate of 33% is based on the experience of Insulating with smaller installations. Insulating submitted one or more bids to Simlrin for the subcontract for installing the underground insulated pipe system at McGuire but was underbid by Bichmond.
7. Bichmond actually sustained a net loss in excess of $77,000 on the entire McGuire subcontract. Profit or loss on the -underground insulated pipe system portion of the subcontract operations cannot be reasonably determined from the available evidence. If Insulating had received the underground insulated pipe system portion of the McGuire subcontract at the same price that Bichmond was paid for it, there is no proof that Insulating would have made, with certainty, a profit thereon. Plaintiffs’ estimate that Simlrin made a profit on its McGuire subcontract with Bichmond is not supported by adequate proof. Simlrin through other subcontracts paid for the cost of the pipe and the cost of labor for laying the pipe underground. The $747,350 paid by Simlrin to Bich-mond included excavating, loops, concrete, waterproofing, insulating concrete, manholes, seeding, repairing roads, safety precautions, etc. A Simlrin tabulation of subcontract bids for the underground distribution system lists bids of $475,000 and $492,000 for insulating concrete only. The difference between the $747,350 paid by Simlrin to Bichmond for the insulating, etc., operations and the total amount Sim-kin received from defendant under item #2 of its McGuire contract includes change orders, modifications and costs not specifically related to the underground insulated pipe system installation. The evidence is insufficient to support a finding as to what gross or net profit, if any, the prime contractor Simkin made on the McGuire underground insulated pipe system installed by its subcontractor Bichmond. A large part of the correspondence between Simkin and Bich-mond, and the correspondence between Simkin and the defendant has been lost and was not available to the plaintiffs. An officer of Bichmond testified that Bichmond did not keep its records in a way which would permit the determination of the profit, if any, made on the underground insulated pipe system portion of the subcontract at McGuire.
*601 8. The saving, if any, that accrued to defendant on the cost of the infringing underground insulated pipe system installed at McGuire over the cost of a noninfringing system has not been adequately proved. Noninfringing systems include a tile system and a prefabricated- system. Plaintiffs’ exhibit 90 indicates that on June 22, 1953, Richmond estimated that the cost of a tile system for McGuire would be $1,001,800 excluding excavating, backfilling, and other items. Plaintiffs’ exhibit 64 indicates that on October 26, 1953, Simkin estimated that the cost of a “Ric-Wil” prefabricated system for McGuire would be $1,321,807 including excavating, back-filling, manholes, and other items, and estimated that the cost of the insulating concrete system would be $1,131,703. These rough estimates are inadequate to warrant a finding that defendant actually saved any specific sum on the installation of the infringing underground insulated pipe system at McGuire.
9. A patent license agreement, plaintiffs’ exhibit 87-D, between Zonolite and Insulating, executed July 1,1953, granted Insulating a 5-year license to make installations under the Goff patent within a specified territory at a royalty to be computed on the basis of 50 cents for each 4-cubic-foot bag of vermiculite aggregate used in any installation of the licensed system. Zonolite made similar agreements with several other licensees for several other specified territories within the United States. These agreements specified that the licensee would use Zonolite’s registered trademark “Z-Crete” on materials complying with Zonolite specifications and sold within the licensee’s territory. Under its agreement with Zonolite, Insulating could not grant sublicenses under the Goff patent unless approved in writing by Zonolite, and Insulating could not bring suit for patent infringement without first obtaining the permission of Zonolite. The agreement further provides that in the event of any suit for patent infringement, the damages recovered would be divided between the parties in the same ratio that the parties have agreed in advance to divide the expense of litigation. There is evidence that this ratio is 50-50.
10. An agreement, plaintiffs’ exhibit 88, between Zonolite, Insulating, and Waterproof Insulation Company, executed *602 subsequent to the holding of this court that the Golf patent is valid and infringed, provides for the settlement of litigation between the said parties and granted Waterproof Insulation Company a nonexclusive nontransferable license under the Goff patent at a royalty rate of 15% of the gross price charged for the installation of the license system. Applying this rate to the $747,350 that Richmond received from Simkin for the underground insulated pipe system at McGuire, the royalty would amount to $112,102.
11. Summarizing the evidence pertaining to the accused installation at McGuire Air Force Base, plaintiff Zonolite might have expected to receive $33,564 in royalties under its regular license agreement if one of Zonolite’s licensees had installed the McGuire system. However, the court has held that only portions of the McGuire installation infringe the Goff patent. Accurate determination at this time of the actual extent of the infringing portion would require extensive and expensive excavating. The percentage figure of 62% noted in finding 4 provides a reasonable basis for assessing defendant’s liability. On said basis that 62% of the total length of the underground insulated pipe system at McGuire may have infringed the Goff patent, reasonable and entire compensation for plaintiff Zonolite, the patent owner, would amount to 62% of $33,564, i.e., $20,810, for the accused McGuire installation. This amount provides compensation at the rate of approximately 69 cents per foot. Zonolite may divide its recovery with Insulating in any ratio upon which they have agreed. In view of the above reasonable basis for determining reasonable and entire compensation, it is unnecessary to summarize the loss of profits to Insulating, the profits made by the contractor or subcontractor, or the saving in cost to defendant, all based on speculation and/or incomparable estimates.

Beaufort Air Force Base

12. The underground insulated pipe system installed at the Marine Air Force Base, Beaufort, S.C., utilized a heat insulating concrete known as cell-concrete. Cell-concrete is a mixture of Portland cement, water, and a foaming agent *603 which, produces a lightweight cellular concrete containing evenly spaced minute air cells. Cell-concrete does not contain vermiculite aggregate but does have a heat insulating factor approximating that of heat insulating concretes containing vermiculite. Cell-concrete generally has a density of not greater than 20 pounds per cubic foot. Claim 1 of the Goff patent specifies insulating concrete weighing less than 50 pounds per cubic foot, and claim 2 specifies insulating concrete weighing approximately* 23 pounds per cubic foot. The Goff patent claims in suit are reproduced in finding 8 accompanying the court’s opinion dated April 3,1957. The heat insulating cell-concrete utilized in the underground insulated pipe system at Beaufort is equivalent to the heat insulating concrete specified in claims 1 and 5 of the Goff patent.
13. The underground insulated pipe system at Beaufort was installed as described in plaintiffs’ exhibit 83 entitled “Dockstader Cell-Concrete Insulation for underground pipe lines.” The Beaufort installation included a pipe system having a base of structural concrete, heat insulation of the pipe in the form of heat insulating concrete completely and solidly enclosing and supporting the pipe solely on the concrete base, and constituting a monolithic embedment for the pipe, the insulating concrete weighing less than 50 pounds per cubic foot. The system was capable of conveying fluid with a heat differential of at least 150° F. without injury. Claims 1 and 5 of the Goff patent, previously held valid by the court, have been infringed by those portions of defendant’s installation at Beaufort where no structural concrete encasement or planks were used to provide a protective cover for the heat insulating concrete.
14. Much of the underground insulated pipe system at Beaufort was covered with a protective structural concrete slab 4 to 6 inches thick. Approximately 10,926 lineal feet of the Beaufort system were covered by such slabs, and approximately 1,621 lineal feet were not so covered. Thus, approximately 13% of the total length of the Beaufort system may have been an infringement of certain claims of the Goff patent. On the basis set forth in finding 11, Zonolite would receive compensation in the amount of $20,810 for approx *604 imately 30,000 lineal feet of the underground pipe system at McGuire at the rate of approximately 69 cents per lineal foot. By the application of this rate to the unprotected 1,621 lineal feet of underground pipe at Beaufort, reasonable and entire compensation for plaintiff Zonolite amounts to $1,118 for the accused Beaufort installation. L. H. Winkler, of plaintiff Insulating Concrete Corporation, computed that the accused Beaufort installation required 2,981 cubic yards of insulating concrete. If vermiculite aggregate had been used at the rate of 6.75 bags per cubic yard, approximately 20,122 bags would have been used on the entire system, and 13% thereof, or approximately 2,616 bags of vermiculite, in the infringing portion. At the standard Zonolite royalty rate of 50 cents per bag, the Zonolite royalty on the Beaufort installation would have amounted to approximately $1,308. The rate at this royalty would amount to approximately 80 cents per foot.
15. The Beaufort underground insulated pipe system was installed by S. E. Dockstader, Inc., subcontractor for Wm. H. Singleton Co., Inc., and W. H. Sullivan Co., Inc., prime contractor. The amount paid Dockstader for installation of the high temperature hot water distribution system and the underground insulated fuel oil transfer system at Beaufort, including excavating, insulating concrete conduit, waterproofing, backfilling, and other items, was $395,114. Applying the 33% profit rate of Insulating, noted in finding 6, indicates that Insulating might have expected to realize a gross profit of approximately $130,387 if Insulating had received the subcontract for Beaufort. Assuming an increase in overhead expense at 5%, amounting to approximately $19,750, the net profit to Insulating might have been about $110,637 on the Beaufort installation.
16. W. H. Sullivan, Jr., of W. H. Sullivan Co., contractor, testified that the high temperature water distribution system at Beaufort was sold to defendant for approximately $401,194. Subtracting from this figure the sum of $395,114 received by subcontractor Dockstader for said system, indicates that the prime contractor may have made a gross profit of about $6,080 on the Beaufort system. The bookkeeper for the subcontractor testified that the company records indicate *605 that Dockstader made a net profit of $1,336 on the Beaufort system after adding a 25% overhead to the actual expenses. The saving, if any, that accrued to defendant on the cost of the infringing system installed at Beaufort over the cost of some noninfringing system has not been proved.
17. Summarizing the evidence pertaining to the accused Beaufort installation, approximately 13% of the total length of the Beaufort underground insulated pipe system infringed certain claims of the Goff patent. On the basis of 69 cents per lineal foot of infringing conduit, reasonable and entire compensation for plaintiff Zonolite, the patent owner, would amount to $1,118 for Beaufort. Zonolite may divide its recovery with plaintiff Insulating in any ratio upon which they have agreed. The profits made by the contractor and the subcontractor at Beaufort constitute a less reasonable basis for determining compensation due plaintiff Zonolite.

Andrews Air Force Base

18. The underground insulated pipe system installed at Andrews Air Force Base, Camp Springs, Md., also utilized cell-concrete as the heat insulating concrete. The Andrews system was installed as described in plaintiffs’ exhibit 83 entitled “Dockstader Cell-Concrete insulation for underground pipe lines.” The Andrews system was similar to the Beaufort system described in finding 13. Claims 1 and 5 of the Goff patent have been infringed by those portions of defendant’s installation at Andrews where no structural concrete encasement or planks were used to provide a protective cover for the heat insulating concrete.
19. The response of the Chief of Engineers, Department of the Army, dated June 23,1960, indicates that the accused underground insulated pipe system at Andrews had a total length of 2,520 lineal feet, of which 250 lineal feet were encased in Portland cement concrete used under roads and parking areas. Thus, 2,270 lineal feet, or about 90% of the total length, may have infringed the Goff patent. The response indicates that a total of 397 cubic yards of insulating concrete was poured at Andrews. If vermiculite aggregate had been used at the rate of 6.75 bags per cubic yard, about 2,680 bags would have been used in the in fringing por *606 tion. At the standard. Zonolite royalty rate of 50 cents per bag, the Zonolite royalty on the Andrews installation would have amounted to approximately $1,340. This amount provides compensation at the rate of approximately 59 cents per foot. At the rate of 69 cents per foot, the reasonable and entire compensation to Zonolite for the infringing portion of the accused installation at Andrews amounts to $1,566.
20. The Andrews underground insulated pipe system was installed by S. E. Dockstader, Inc., a subcontractor of N. E. Anderson Company, Inc., a subcontractor of W. M. Chappell, Inc. The cost of the Andrews system to defendant was estimated at $40,000, and the subcontractor’s price applicable to the system was estimated at approximately $36,000. Applying the 33% profit rate to the Andrews cost of $36,000 indicates Insulating might have expected to realize a net profit of approximately $11,880 if Insulating had received the Andrews subcontract.
21. The data set forth in findings 3-20 inclusive are tabulated and summarized in the following chart:
Comparison op Data and Summary

Underground insulated pipe systems

McGuire Beaufort Andrews Total or average
a. Total cost (estimated)_ $747,350. $395,114. $36,000. $1,178,464
b. Profit at Insulating rate of 33% less overhead, 209,126.. 110,637— 11,880-331,642
o. Total system length_ 48,000 ft. 12,547 ft. 2,520 ft. 63,067 ft.
d. Infringing length.. ^30,000 ft. 1,621 ft.. 2,270 ft. 33,891 ft.
e. Ratio of infringing to total lengths, d/o. 62%. 13%-90%-53.7%
f. Royalty at Zonolite rate of 60 cents per bag. $20,810. 4 $1,308-, $1,340. $23,458
g. Royalty rate per infringing foot, f/d. '.69/ft_ .80/ft— .69/ft— .69/ft.
h. Compensation at average rate of 69 cents per foot. $20,810.. Í a $1,118— $1,566. ?! •n $23,494
[Ratio of total compensation to total cost, i.e., h/a, Is approximately 2%]
22.A Zonolite 1936-1937 information circular (Z-12) for low cost underground hot pipe insulation identified as “b-t-u” or “best type underground” indicates that the Zonolite “b-t-u” system “does not require a supporting structural *607 concrete base or external waterproofing,” and tliat “b-t-u” systems are covered by TT.S. patent 2,355,966. A 1937 information circular (Z-13) for the “b-t-u” system also indicates that the “b-t-u” system is licensed under said patent. A similar statement was made in a 1937 Z-Crete information circular (Z-14). Zonolite advertising in 1938 (defendant’s exhibit H, page 23) indicates that three hot pipe underground systems including one with a supporting base pad and waterproofing envelope, another without the waterproofing, and the “b-t-u” system without pad or waterproofing, are available and may be made by applicators licensed under Z-Crete patents including the ’966 patent. One of the paper containers (defendant’s exhibit E) utilized by plaintiff Zonolite in the sale of Z-Crete aggregate bears the following notice:
Process and Product Covered by One or More of the Following patents :
1,922,448, 1,927,102, 1,963,275, 1,963,276, 1,972,390, 1,992,669,2,139,378,2,355,966, 2,463,927.
23. The low cost “b-t-u” system was not accused in plaintiffs’ petition herein. The opinion and findings of this court dated April 3, 1957, on validity and infringement of the Goff ’966 patent did not consider the “b-t-u” system. The court did not find that every claim of the ’966 patent is limited to the preferred system illustrated in the patent drawings. The evidence does not support a finding that plaintiffs have knowingly and deliberately misrepresented the scope of the Goff ’966 patent by false advertising or false marking. Plaintiffs’ advertising appears to have been drawn and circulated in good faith.
24. The evidence does not show all the terms and conditions of any oral agreements reached between plaintiff Zono-lite and various applicators licensed under written license agreements of the type illustrated by plaintiffs’ exhibits 87-B through 87-G. These license agreements granted applicators, such as plaintiff Insulating, the exclusive right to manufacture and sell underground insulated pipe systems in accordance with the invention claimed in U.S. Letters Patent 2,355,966 within specified territories for a royalty computed on the basis of 50 cents for each 4-cubic-foot bag *608 of vermioulite aggregate used in the licensed system. Some of tírese license agreements were to continue for the life of the patent and others were to continue for a 1-year or for a 5-year period. Most of the license agreements granted the applicator the right to apply the Zonolite trademark “Z-Crete” to materials made in conformance with Zonolite specifications.
25. In March 1959, plaintiff Zonolite granted an exclusive license under U.S. Patent 2,355,966 and certain trademark rights to Concrete Thermal Casings, Inc., Seattle, Washington, hereinafter called CTC, and CTC began the licensing of applicators. A 1959 CTC information circular (defendant’s exhibit I) describes three underground insulated pipe systems including a “b-t-u” system having a structural concrete base pad. The circular states that the systems come under patent 2,355,966 and others issued and pending. A paper container (defendant’s exhibit S) for CTC thermal concrete aggregate for underground pipe insulation carries the following notices:
Coated Vermiculite (U.S. Patent No. 2824022) Processed for Underground Use
and
All three systems above are protected by patents and patents pending — U.S. Patent No. 2355966, Patented Canada 1947.
26. The evidence herein does not support any finding that plaintiffs’ activities in promoting the use of the Goff patent invention utilized false or misleading advertising, false marking, misrepresentation, or a misuse of the Goff patent such as to preclude the right of plaintiff Zonolite to recover reasonable and entire compensation for the defendant’s unlicensed use of the Goff invention.
27. Under its license agreement (plaintiffs’ exhibit 87-D) plaintiff Insulating was a nonexclusive licensee having no proprietary interest in the Goff patent in suit. The license granted Insulating the right to manufacture and sell, but did not convey the right to use. The license did not grant Insulating the unrestricted right to exclude others from making, using, and selling, nor did it convey to Insulating the unrestricted right to sublicense others to make, use, and *609 sell. Plaintiff Insulating is not entitled to recover under 28 U.S.C. § 1498.
28. Plaintiff Zonolite is entitled to recover reasonable and entire compensation for defendant’s unlicensed use of the invention covered by the Goff patent. A reasonable basis for computing said compensation is set forth in finding 11. This basis applies an established royalty rate to only the infringing portion of the underground insulated pipe system at defendant’s McGuire Air Force Base. Such an application results in a base rate of 69 cents per lineal foot of infringing system. The chart included in finding 21 shows that plaintiff Zonolite is entitled to recover the sum of $23,494 as reasonable and entire compensation for the accused installations at McGuire, Andrews and Beaufort. It would be reasonable to apply the same rate of 69 cents per foot to the infringing portion of the other accused installations.
On December 17,1962, the court ordered that as to plaintiff Insulating Concrete Corporation the petitions be dismissed and that judgment be entered for plaintiff Zonolite Company in the sum of $23,494. On February 6,1963, upon consideration of plaintiff Zonolite Company’s motion for alteration of the order granting judgment on December 17, 1962, and the opposition thereto, the court ordered that the judgment of December 17, 1962, in the sum of $23,494 for plaintiff Zonolite Company be vacated and that judgment be entered instead in the sum of $30,999 consisting of $23,494, plus an amount computed at the rate of four percent per annum for delay in payment, as a part of just compensation, on the amounts set forth in Finding 21h of the trial commissioner’s report set forth above, for the period between the filing of the petitions and the date of judgment, amounting to $7,505. In all other respects the order of December 17,1962, remains in full force and effect.